UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TERRY GROSS,<br><br>        Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, et al.,<br><br>        Defendants. | Case No. 24-cv-02069-EJD (VKD)<br><br>**ORDER RE MARCH 10, 2025 DISCOVERY DISPUTE RE BREEN REPORT; DENYING ADMINISTRATIVE MOTION TO SEAL**<br><br>Re: Dkt. No. 26, 27 |

The parties ask the Court to resolve their dispute regarding whether the attorney-client privilege and the attorney work product doctrine protect from disclosure a report prepared by attorney Joseph Breen and preclude questioning of Mr. Breen about his work leading up to the report.[1]  Dkt. No. 26.  The Court finds this dispute suitable for resolution without oral argument.  Civil L.R. 7-1(b).

As explained below, the Court concludes that the Breen report is not entitled to protection as a privileged communication due to waiver.  The Court directs further proceedings on the question of whether Mr. Breen's work leading up to the report is protected by the work product doctrine.

**I.    BACKGROUND**

This action arises from an insurance coverage dispute.  Plaintiff Terry Gross asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith

---

[1] It is not entirely clear that Scottsdale asserts work product protection in addition to attorney-client privilege for the Breen report.  Scottsdale's portion of the discovery dispute letter focuses principally on privilege and refers only in passing to work product protection.  Mr. Gross's portion of the discovery dispute letter does not discuss work product protection at all.

denial of an insurance claim against defendant Scottsdale Insurance Company ("Scottsdale") based on Scottsdale's alleged breach of an obligation to defend and indemnify two former directors of a now-defunct company, Flora Biosciences, Inc. ("Flora"), in connection with a state court lawsuit, *Gross v. Alderete, et al.* ("the Underlying Action"). *See* Dkt. No. 1-1. According to the operative complaint, Flora was a Delaware corporation formerly doing business in California, with its former principal place of business in Santa Clara County, California. *Id.* at 3, ¶ 1.

In December 2018, counsel for Mr. Gross (a Flora shareholder) sent a letter to Flora's board of directors demanding that the company pursue legal action against Flora's former CEO John Alderete. Dkt. No. 26 at 1, 4; *see also* Dkt. No. 1-1 at 58-63. Flora tendered the demand letter to Scottsdale, its insurer. Dkt. No. 26 at 1, 4. In March 2019, Scottsdale retained an attorney, Joseph Breen of the law firm Gordon & Rees, to conduct an investigation on behalf of Flora regarding the demand letter. *Id.*; *see also* Dkt. No. 1-1 at 74 ("Scottsdale's right and duty to defend [Flora] includes the right to appoint defense counsel. Toward this end, Scottsdale has assigned the law firm Gordon & Rees . . . to represent the company for purposes of investigating the allegations against Dr. Alderete contained in the Demand Letter."). Mr. Breen conducted an investigation and provided a report ("Breen report") to Scottsdale and Flora's board of directors on May 21, 2019. Dkt. No. 26 at 4.

Mr. Gross became a member of Flora's board of directors on May 22, 2019, but resigned three weeks later on June 12, 2019. *Id*. At some point after he resigned, another former member of Flora's board, Mr. Verges, shared the Breen report with Mr. Gross. *Id.* Mr. Gross contends that a representative of Scottsdale advised Mr. Verges in writing that Scottsdale "are in no way telling you not to disclose the [Breen] report to Terry Gross if he indeed has a lawful right or duty to view it." *Id.* at 2.

During Mr. Breen's deposition on February 13, 2025, Mr. Gross's attorney attempted to use the Breen report as an exhibit and to ask Mr. Breen questions about it. *See* Dkt. No. 26, Ex. 2. Scottsdale's counsel objected to use of the report and questioning about it, asserting both attorney-client privilege and work product protection. *Id.*

2

## II.     LEGAL STANDARD

### A.     Attorney-Client Privilege

Because the sole basis for federal jurisdiction in this case is diversity jurisdiction, California state law supplies the rule of decision in this action and California state law governs application of the attorney-client privilege. Fed. R. Evid. 501; *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *Lawson v. GrubHub, Inc.*, No. 15-cv-05128-JSC, 2017 WL 1684964, at *1 (N.D. Cal. May 3, 2017).

In California, the attorney-client privilege is described in the Evidence Code § 950 *et seq*. According to that code, a client has the privilege "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." Cal. Evid. Code § 954. A "confidential communication" is:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other that those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952. "If a 'confidential communication between client and lawyer' exists, the client has a privilege protecting against disclosure (§ 954), and the attorney has an obligation to refuse disclosure unless otherwise instructed by the client (§ 955)." *Scripps Health v. Super. Ct.*, 109 Cal. App. 4th 529, 533 (Ct. App. 2003).

In the insurance context, California recognizes a "tripartite relationship" among insured, insurer, and defense counsel retained by the insurer for the insured. *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal.App.4th 1388, 1406-07 (2002). That is, "absent a conflict of interest, an attorney retained by an insurance company to defend its insured under the insurer's contractual obligation to do so represents and owes a fiduciary duty to both the insurer and insured." *Id*. at 1406; *Am. Mut. Liab. Ins. Co. v. Superior Ct.*, 38 Cal. App. 3d 579, 591–92 (Ct. App. 1974).

As the party asserting the attorney-client privilege, Scottsdale bears the burden of

3

1  establishing that the privilege applies to the Breen report. *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009).

### B.     Attorney Work Product Doctrine

In contrast to the attorney-client privilege, a district court applies federal law to resolve work product disputes, even where the only claims in the action arise under state law. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006); *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702-03 (10th Cir. 1998); *United Coal Cos. v. Powell Construction Co.*, 839 F.2d 958, 966 (3d Cir. 1988); *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 635 (N.D. Cal. 2019).

Rule 26(b)(3) shields from discovery documents that fall within the scope of the attorney work product doctrine, unless certain exceptions apply. Fed. R. Civ. P. 26(b)(3). The attorney work product doctrine protects from discovery materials that are prepared by or for a party or its representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). The doctrine provides qualified protection against discovery of the legal strategies and mental impressions of a party's counsel. *Hickman v. Taylor*, 329 U.S. 495, 508–10 (1947); *Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981). It does not protect facts from disclosure unless disclosure of those facts would inherently reveal an attorney's strategies or mental impressions. *See, e.g., O'Toole v. City of Antioch*, No. 11-cv-01502-PJH (MEJ), 2015 WL 1848134, at *3 (N.D. Cal. Apr. 14, 2015); *Hamilton v. RadioShack Corp.*, No. 11-cv-00888 LB, 2012 WL 2327191, at *4–5 (N.D. Cal. June 18, 2012).

As the party asserting the attorney work product doctrine, Scottsdale bears the burden of establishing that the protection applies. *See, e.g., United States v. Ruehle*, 583 F.3d 600, 607-608 (9th Cir. 2009); *Insight Global, LLC v. Beacon Hill Staffing Grp., LLC*, No. 17-cv-00309-BLF (VKD), 2018 WL 6573081, at *2 (N.D. Cal. Dec. 13, 2018).

### C.     Waiver of Privilege or Protection

Both the attorney-client privilege and work product protection may be waived. The question of waiver is governed by federal law. Fed. R. Evid. 502(f). Rule 502(b) of the Federal Rules of Evidence applies here and provides in relevant part:

4

> [T]he disclosure [of a communication or information covered by attorney-client privilege or work-product protection] does not operate as a waiver in a federal or state proceeding if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).

As a general matter, the attorney-client privilege is waived when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866–67 (N.D. Cal. 2019). By contrast, a voluntary disclosure of work product to a third party does not always waive work product protection. Such a disclosure waives the protection where it is made to an adversary in litigation or where it is made in a manner that substantially increases the opportunities for potential adversaries to obtain the work product. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020) (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024 (3d ed. 2020)); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("[T]he work-product privilege may be waived by disclosure to third parties which results in disclosure to an adversary party.").

### III.   DISCUSSION

Mr. Gross argues that the Breen report is not privileged or protected, at least as to him, because, as a shareholder, he was entitled to see the report under Delaware law. Dkt. No. 26 at 3-4. Separately, Mr. Gross argues the Breen report is not privileged because it reflects only a factual investigation, and not legal advice. *Id.* at 2-3. Scottsdale responds that under California law, the Breen report is privileged because Mr. Breen was retained to provide legal advice. *Id.* at 4. Scottsdale acknowledges that Mr. Gross obtained a copy of the Breen report in 2019, but contends that, even under Delaware law, Mr. Gross was never entitled to receive it. *Id.* at 5-6. Finally, Scottsdale argues that it has never waived the attorney-client privilege (or work product protection) because it has objected to the disclosure of the report and to questioning of Mr. Breen

5

about it. *Id.* at 6.

### A. The Breen Report

The Court first considers whether the Breen report is a privileged communication under California law. Scottsdale has shown that the report was prepared by an attorney who was specifically retained on Flora's behalf to investigate the allegations in Mr. Gross's demand letter and to provide legal advice to Flora's board. Mr. Gross's argument that the report is purely factual—and no different than what a non-lawyer claims adjuster might prepare—is unsupported.[2] Scottsdale has also shown that at the time of the report's preparation and delivery to Flora's board of directors, Mr. Breen, Flora, and Scottsdale had a "tripartite relationship," such that disclosure of the Breen report to Scottsdale, as Flora's insurer, was within the scope of § 952 of the California Evidence Code. Accordingly, Scottsdale has shown that, absent waiver, the Breen report is entitled to protection as a privileged communication.

The Court next considers the question of waiver under Rule 502(b). There is no dispute that the Breen report was disclosed subsequently to at least two shareholders whom, Scottsdale contends, were not entitled to have it—Mr. Verges and Mr. Gross. *Id*. at 5. While the parties disagree about whether Delaware law applies and, if it does, whether Mr. Gross "properly" received the Breen report under Delaware law, *compare id.* at 3 *with id.* at 5, it is undisputed that both Mr. Verges and Mr. Gross have had the Breen report since mid-2019. *See id.* at 4. Rule 502(b) requires the Court to consider whether the privilege holder (i.e. Scottsdale and/or Flora) "promptly took reasonable steps to rectify the error." Scottsdale does not identify any steps that it or Flora took to retrieve the report from either Mr. Verges or Mr. Gross at any time since, including during the pendency of this litigation.

Although it is not entirely clear when Flora or Scottsdale first learned that the Breen report had been disclosed to Mr. Gross, the record reflects that Scottsdale should have known of this disclosure no later than December 15, 2023 when Mr. Gross filed and served his complaint against Scottsdale in this case. Paragraph 17 of that complaint refers to the Breen report as follows:

---

[2] The Court does not rely on examination of the report itself for this conclusion.

6

> In a written report dated May 21, 2019 ("G&R Report"), Gordon & Rees concluded that Alderete's conduct created potential liability for Flora and a shareholder derivative action would likely be successful in proving liability and damages. The report noted that Flora failed to provide all documents necessary to complete the investigation, despite repeated requests to Alderete, Stoll and another former Flora director and officer, Phoebe Wall Howard ("Howard"), who co-founded Flora with Alderete. The report stated that Flora's Board concluded that initiating litigation against Alderete was not in the Company's best interests at the time.

Dkt. No. 1-1 at 7, ¶ 17. Not only does this paragraph reveal that Mr. Gross was in possession of the report, but it also *publicly discloses* the contents of the report, including Mr. Breen's conclusions and legal advice. Moreover, when Scottsdale removed this action from state court to federal court on April 4, 2024, this paragraph was included in the complaint attached as Exhibit A to Scottsdale's own *publicly filed* notice of removal. *See id.*

In other words, Scottsdale (and Flora) have known for over a year at least that Mr. Gross had a copy of the Breen report and that some portions of it had been publicly disclosed as well, and they took no action. Scottsdale does not explain how it can now properly assert that the Breen report is entitled to protection as a privileged communication in these circumstances. *See Doe 1 v. McAleenan*, No. 18-cv-02349-BLF (VKD), 2019 WL 4963196, at *4 (N.D. Cal. Oct. 8, 2019) (applying Rule 502(b) and finding waiver where privilege holder delayed asserting a claim of privilege until after plaintiffs had highlighted the importance of the document, discussed it with defendants, used it in a discovery dispute submission, and discussed it in open court); *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06-cv-2804-BTM (WMc), 2010 WL 275083 at *4-6 (S.D. Cal. Jan. 13, 2010) (finding waiver where producing party failed to raise privilege claim promptly after documents were used in deposition and summary judgment motions); *cf. Datel Holdings Ltd. v. Microsoft Corp.*, No. 09-cv-5535-EDL, 2011 WL 866993 at *4-*5 (N.D. Cal. Mar. 11, 2011) (declining to find waiver where producing party immediately investigated email exchange used in deposition and raised privilege claim after discovering that exchange originated with a request from counsel). Merely objecting to the disclosure now is not sufficient.

For these reasons, the Court concludes that the Breen report is no longer entitled to

1 protection as an attorney-client privileged communication due to waiver. There is no need for the
2 Court to reach the other issues briefed by the parties regarding the applicability and/or proper
3 application of Delaware law.

### B. Questioning of Mr. Breen about the Breen Report

Even if the Breen report is not entitled to protection as an attorney-client privileged communication, a question remains whether and to what extent Mr. Breen may be asked in deposition about his work leading up to the report. As noted above, application of the work product doctrine is governed by federal law. Neither party adequately addresses whether work product protection might apply here, and if so, whether the protection has also been waived.

Accordingly, the Court orders the parties to confer further on this point. If they disagree, they may file a further discovery dispute letter on this limited issue as directed below.

### C. Related Motion to Seal

In conjunction with this discovery dispute, Mr. Gross filed an administrative motion to consider whether another party's material should be sealed and provisionally filed the Breen report (Exhibit 1 to the discovery dispute letter) under seal. Dkt. No. 27. Mr. Gross states that he "does not agree that the document is privileged or that it must be filed under seal, but has complied with this request to allow Scottsdale the opportunity to request that the document be sealed pursuant to Rule 79-5(f)." *Id.* Under Civil Local Rule 79-5(f), Scottsdale was required to file "a statement and/or declaration" in support of sealing the document within seven days of the filing of the administrative motion. Scottsdale has not done so. The Court may therefore deny sealing on this basis alone.

Furthermore, in the context of a discovery dispute, a party seeking to seal documents or information must generally meet the "good cause" standard set out in Federal Rule of Procedure 26(c). *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir. 2016). As noted above, the Court does not rely on Exhibit 1 in resolving the discovery dispute. However, the Court finds no basis for good cause to maintain the Breen report under seal as material portions of the report have already been publicly disclosed in Mr. Gross's complaint.

Accordingly, the Court directs Mr. Gross to file the Breen report publicly on the docket or

1  advise the Court that he withdraws the report entirely no earlier than 14 days after the date of this
2  order.

3  **IV.    CONCLUSION**

4  The Breen report is not entitled to protection as an attorney-client privileged
5  communication due to waiver.  Any remaining dispute regarding whether the work product
6  doctrine applies to Mr. Breen's testimony about his work leading up to the report must be
7  addressed in a further discovery dispute letter to be filed no later than **April 3, 2025**.

8  **IT IS SO ORDERED.**

9  Dated: March 21, 2025

Virginia K. DeMarchi
United States Magistrate Judge