**COZEN O'CONNOR**
Valerie D. Rojas
*vrojas@cozen.com*
601 South Figueroa Street, Suite 3700
Los Angeles, California 90017
Telephone: (213) 892-7965
Facsimile: (213) 784-9076

Attorney for Defendant SCOTTSDALE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY GROSS, individually and derivatively on behalf of FLORA BIOSCIENCE, INC. a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation, and DOES 1 through 10, inclusive<br><br>Defendants,<br><br>and<br><br>FLORA BIOSCIENCE, INC., a Delaware corporation.<br><br>Nominal Defendant. | Case No. 5:24-cv-02069-EJD<br><br>[State Court Case No. 23CV427755]<br><br>**DEFENDANT SCOTTSDALE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with Statement of Undisputed Facts; Request for Judicial Notice; Declaration of Valerie D. Rojas; Declaration of Michael Zartman; Appendix of Exhibits; and Proposed Judgment*]<br><br>**DATE: NOVEMBER 20, 2025**<br>**TIME: 9:00 A.M.**<br>**COURTROOM: 4** |

**TO THE HONORABLE COURT AND TO ALL PARTIES:**

**PLEASE TAKE NOTICE** that on November 20, 2025, at 9:00 a.m., or as

soon thereafter as the matter may be heard, in Courtroom 4 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, Defendant Scottsdale Insurance Company ("Scottsdale") will, and hereby does, move this Court for an Order Granting Summary Judgment or Partial Summary Judgment on Plaintiff Terry Gross ("Gross") First Amended Complaint, pursuant to Federal Rules of Civil Procedure Rule 56.

First, there is no genuine issue as to any material fact and Scottsdale is entitled to judgment as a matter of law with respect to Gross's first cause of action for breach of contract because the underlying lawsuit filed by Gross against Flora and its officers and directors is excluded from coverage under the Insured v. Insured Exclusion in the business and management indemnity policy ("Policy") issued by Scottsdale to Flora Bioscience, Inc. ("Flora").

Second, there is no genuine issue as to any material fact and Scottsdale is entitled to judgment as a matter of law with respect to Gross's second cause of action for breach of the implied covenant of good faith and fair dealing because there is no potential for coverage for the underlying lawsuit filed by Gross against Flora and its officers and directors as it is excluded from coverage under the Insured v. Insured Exclusion in the Policy issued by Scottsdale to Flora, Scottsdale's conduct, even if incorrect, was reasonable as a matter of law, and/or subject to a genuine dispute as a matter of law.

Third, there is no genuine issue as to any material fact and Scottsdale is entitled to judgment as a matter of law with respect to Gross's third cause of action for bad faith denial of insurance claim because there is no potential for coverage for the underlying lawsuit filed by Gross against Flora and its officers and directors as it is excluded from coverage under the Insured v. Insured Exclusion in the Policy issued by Scottsdale to Flora, Scottsdale's conduct, even if incorrect, was reasonable as a matter of law, and/or subject to a genuine dispute as a matter of law.

Fourth, there is no genuine issue as to any material fact and Scottsdale is

entitled to judgment as a matter of law with respect to Gross's claim for punitive damages because there is no potential for coverage for the underlying lawsuit filed by Gross against Flora and its officers and directors as it is excluded from coverage under the Insured v. Insured Exclusion in the Policy issued by Scottsdale to Flora, and Scottsdale's conduct, even if incorrect, was reasonable as a matter of law. In addition, there is no evidence of malice, oppression or fraud by Scottsdale.

This Motion for Summary Judgment or Partial Summary Judgment is based on this Notice; the Memorandum of Points and Authorities attached hereto; the Statement of Undisputed Facts; the Declarations of Valerie Rojas and Michael Zartman; the Request for Judicial Notice; and Appendix of Exhibits filed concurrently herewith.

DATED: October 9, 2025 COZEN O'CONNOR

By: */s/ Valerie D. Rojas*
Valerie D. Rojas
Attorney for Defendant
SCOTTSDALE INSURANCE COMPANY

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT .............................. 8

II. FACTUAL BACKGROUND .............................. 9
- A. The Policy .............................. 9
- B. Gross's Derivative Demand .............................. 11
- C. Gross Becomes a Director of Flora .............................. 11
- D. Gross Files a Lawsuit Against Flora and Some of its Directors and Officers .............................. 12
- E. The Coverage Dispute .............................. 14

III. LEGAL ARGUMENT .............................. 15
- A. Applicable Standard .............................. 15
- B. Gross Cannot Satisfy His Burden of Establishing a Potential for Coverage .............................. 16
- C. Interpretation of Insurance Contracts .............................. 17
- D. Scottsdale Did Not Breach the Contract Because There is No Potential for Coverage for the Gross Action .............................. 17
- E. The Underlying Lawsuit was brought on Behalf of Insureds and Therefore, the Insured versus Insured Exclusion Bars Coverage .............................. 18
- F. Scottsdale is Entitled to Judgment as a Matter of Law on Plaintiff's Bad Faith Claims .............................. 21
- G. Scottsdale is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Punitive Damages .............................. 22

IV. CONCLUSION .............................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Ins. Co. v. Sup. Ct.*,
51 Cal.3d 807 (1990) .......... 17, 19

*Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
244 F.3d 715 (9th Cir. 2001) .......... 18, 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 742 (1986) .......... 15, 16

*Bank of the West v. Superior Court*,
2 Cal.4th 1254 (1992) .......... 17

*Basich v. Allstate Ins. Co.*,
87 Cal.App.4th 1112 (2001) .......... 22

*Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*,
572 F.3d 663 (9th Cir. 2009) .......... 18, 20

*Celotex Corp. v. Catrett*,
477 US 317 (1986) .......... 15

*Chateau Chamberay Homeowners Ass'n v. Associated Indem. Co.*
90 Cal.App.4th 335 (2001) .......... 21

*Collin v. Am. Empire Ins. Co.*,
21 Cal. App. 4th 787 (1994) .......... 19

*Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*,
176 Cal.App.4th 172 (2009) .......... 16

*Intelligent Digital Sys., LLC v. Beazley Ins. Co.*,
716 F. App'x 1 (2d Cir. 2017) (2nd Cir. Sept. 19, 2017) .......... 20

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*,
9 Cal.4th 27 (1995) .......... 17

*LaFon v. American Casualty Co.*,
No. SACV 93-42-GLT (C.D. Cal. Sept. 17, 1993), aff'd, 73 F.3d 369 (9th Cir. 1995) .......... 20

*Love v. Fire Ins. Exch.*,
221 Cal.App.3d 1136 (1990) ........................................ 21

*Maryland Casualty Co. v. National American Ins. Co.*,
48 Cal.App.4th 1822 (1996) ........................................ 16

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................ 15

*McKell v. Washington Mutual, Inc.*,
142 Cal.App.4th 1457 (2006) ........................................ 17

*Mirpad, LLC v. California Ins. Guar. Assn.*,
132 Cal. App. 4th 1058 (2005) ........................................ 19

*Montrose Chem. Corp. v. Super. Ct.*,
6 Cal.4th 287 (1993) ........................................ 16

*Patrick v. Maryland Casualty Co.*,
217 Cal.App.3d. 1566 (1990) ........................................ 22

*Shade Foods, Inc. v. Innovative Products Sales & Marketing*,
78 Cal.App.4th 847 (2001) ........................................ 22

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
12 Cal. App. 4th 715 (1993) ........................................ 19

*Silicon Valley Bank v. New Hampshire Ins. Co.*,
203 F.Supp.2d 1152 (C.D. Cal. 2002) ........................................ 17

*Stanford Ranch, Inc. v. Maryland Cas. Co.*,
89 F.3d 618 (9th Cir. 1996) ........................................ 16

*Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*,
504 F.Supp.2d 803 (N.D. Cal. 2007) ........................................ 16

*Tomaselli v. Transamerica Ins. Co.*,
25 Cal.App.4th 1269 (1994) ........................................ 22

*VierraMoore, Inc. v. Cont'l Cas. Co.*,
940 F. Supp. 2d 1270 (E.D. Cal. 2013) ........................................ 18

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal.4th 1 (1995) ........................................ 17, 21

**Statutes**

Cal. Civ. Code § 1641 .......... 19

Cal. Civ. Code § 3294(a) .......... 22

Civ. Code §§1636-1639, 1641 .......... 17

Civil Code § 3294 .......... 22

**Other Authorities**

Fed. R. Civ. P. 56(e) .......... 15

FRCP 56(c)(1)(B) .......... 15

Rule 56 .......... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Terry Gross ("Gross" or "Plaintiff") is a former director of Flora Bioscience, Inc. ("Flora"). Gross sued Flora and its directors and officers, , John Aldrete ("Alderete"), Robert Robbins ("Robbins") and Mark Stoll ("Stoll") ("Underlying Defendants") alleging that Underlying Defendants mismanaged Flora and breached their fiduciary duties causing losses to Flora and its shareholders. The Underlying Defendants sought insurance coverage for the lawsuit under a directors and officers ("D&O") insurance policy issued by defendant Scottsdale Insurance Company ("Scottsdale") to Flora (the "Policy"). Scottsdale denied coverage because the Policy insures against Claims by third parties seeking redress against Flora itself or its directors and officers in their capacity as such.[1] The Policy does not subsidize or protect against disputes between insureds. Accordingly, the Policy expressly excludes coverage for Claims brought by or at the direction of any insured against another insured in the "Insured vs. Insured Exclusion". Though the Policy does provide for some exceptions to the Insured vs. Insured Exclusion, none are applicable here, and Gross does not allege they are.

Rather, Gross has alleged that the Insured vs. Insured Exclusion does not apply because he was not an insured at the time he first sent his letter to Flora demanding that it pursue claims against Alderete, Robbins and Stoll for mismanagement and breach of fiduciary duties. However, Gross does not dispute that he was a director of Flora after he sent his demand letter and before he filed his lawsuit against the Underlying Defendants ("Gross Action") so that he could pursue his claims against the Underlying Defendants. The Policy is clear that even former directors are Insureds under the Policy. The Insured vs. Insured Exclusion is also clear that it applies to exclude coverage for any Claim brought by an Insured as soon as the

[1] Capitalized terms not otherwise defined are defined in the Policy.

Insured becomes an Insured under the Policy.

The Gross Action is just such a claim, whereby Gross became an Insured under the Policy so he could preserve Flora's assets (such as insurance), then sought redress against the Underlying Defendants for alleged misconduct that affected his own personal assets, settled his claims with the Underlying Defendants for millions in exchange for a covenant not to execute and an agreement to share the proceeds from this action with at least Robbins and Stoll. Once Gross became an Insured, he remained an Insured at the time he filed the Gross Action. Therefore, Scottsdale properly denied coverage under the Policy for the Gross Action and did not breach the contract.

Not only can Gross not prove breach of contract, but he also cannot prove his claim for bad faith. Even if there was coverage for the Underlying Actions (there is not), Scottsdale's coverage position was at the very least reasonable and subject to a genuine dispute, precluding any finding of bad faith. Additionally, Scottsdale's claim handling in this case has been reasonable at all times because Scottsdale appointed defense counsel to investigate Gross's demand for an investigation, and only withdrew coverage after the investigation was complete and it was clear that the claim was being brought by and maintained by an Insured.

Finally, even if there is a genuine issue of material fact concerning whether Scottsdale acted in good faith, Gross cannot recover punitive damages as a matter of law. This is because there is no evidence of malice, oppression or fraud to support an award of punitive damages. Given the foregoing, and as further discussed below, Scottsdale requests that the Court enter summary judgment, or in the alternative, partial summary judgment in its favor.

## II. <u>FACTUAL BACKGROUND</u>

### A. The Policy

Scottsdale issued Business and Management Indemnity Policy ("Policy"), No. EKS3258368 to Flora Bioscience for the "Policy Period" of June 12, 2018 to June 12,

2019. UF 1.

The Policy is a "claims-made-and-reported policy" that includes a coverage section labeled as the Directors and Officers and Company Coverage Section (the "D&O Coverage Section"). UF 2. The D&O Coverage Section includes three insuring clauses, however only the first is relevant here. Insuring Clause Section A.1. of the D&O Coverage Section provides coverage for the Directors and Officers of Flora as follows:

> The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

UF 3.

The term "Directors and Officers" includes "any person who was, now is, or shall become" (a) "a duly elected or appointed director, officer, or similar executive of the **Company** [i.e., Flora Bioscience], or any member of the management board of the **Company**[.]" UF 4. Such persons qualify as "Insureds" under the Policy. UF 4.

The D&O Coverage Section includes an "Insured vs. Insured Exclusion," applicable to all Insuring Clauses to exclude coverage for corporate in-fighting (as opposed to disputes with third parties). UF 5. The Insured vs. Insured Exclusion provides, in pertinent part:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**… brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not

collusive[.]

UF 5.

### B. Gross's Derivative Demand

On or about December 17, 2018, Gross, a shareholder of Flora, made a demand that Flora's Board of Directors pursue legal action against Alderete for his alleged mismanagement of Flora, dereliction in his duties as CEO of Flora, and waste of Flora's resources, which allegedly caused damages to Flora of at least $6 million (the "Derivative Demand"). UF 6. On December 20, 2019, Flora gave notice to Scottsdale of the Derivative Demand. UF 7.

Although the Derivative Demand did not constitute a Claim against any Insured, on March 15, 2019, Scottsdale advised Flora board member, Scott Verges ("Verges"), that Scottsdale appointed defense counsel to investigate the allegations in the Derivative Demand, subject to a reservation of rights. UF 8. In particular, Scottsdale cited to the Insured v. Insured Exclusion as a potential bar to coverage, among other Policy provisions. *Id*. On May 21, 2019, defense counsel completed his investigation of Gross' allegations, and provided his report to Verges, and Scottsdale. Verges and Gross have been friends since law school. UF 9.

### C. Gross Becomes a Director of Flora

On May 16, 2019, Verges emailed Gross to confirm their conversation on the same day in which Verges agreed to, "email to D&O carrier from SCV RE: (i) SVC's subjective more information conclusions; (ii) status of new directors and shareholders; (iii) new addresses for notice; and (iv) SCV's willingness to continue to assist on behalf of the company if there is any deemed conflict due to gross acquisition of shares and board seat." Verges also confirmed that Gross would, "email to shareholders and D&O carrier by Gross mentioning that they too, can buy his shares and his world plans for the company." UF 10.

On May 21, 2019, Verges wrote to Gross and others to advise that assigned defense counsel's "investigation memo has been delivered to the insurer, and I have

spoken to the D&O representative explaining the plan to transfer the shares and appoint Terry to the board. They had no objection and said that in tightly held companies, it is not uncommon to have the situation. As soon as all of this is signed and completed, they simply want the name and contact information of Terry." UF 11.

On May 21, 2019, Gross was appointed as a director of Flora and on May 22, 2019, Scottsdale was notified of his appointment to the board. UF 12.

On May 23, 2019, Verges emailed Scottsdale to inquire whether he could share the investigative report with Gross. In response, Scottsdale advised that Verges should consult with Flora's attorney as Scottsdale could not offer advice to Verges and Verges acknowledged that Scottsdale was reserving its rights under the Policy if he did. UF 13.

**D. Gross Files a Lawsuit Against Flora and Some of its Directors and Officers**

On or about May 11, 2021, Gross filed a lawsuit, individually and derivatively on behalf of Flora, against the Underlying Defendants, Case No. RG20062143 in the Superior Court of the State of California, County of Alameda (the "Gross Action"). UF 14.

In the complaint filed in the Gross Action (the "Gross Complaint"), Gross alleged that in May 2019, Gross assumed the role as sole director of Flora, and that he resigned as a director in June 2019 because Flora was unable to secure a new D&O policy. UF 15. Gross alleged causes of action for: (1) breach of fiduciary duty against Alderete, directly; (2) breach of fiduciary duty against Robbins and Stoll, directly; (3) breach of fiduciary duty against Alderete, derivatively; and (4) breach of fiduciary duty against Robbins and Stoll, derivatively. UF 16.

On November 3, 2020, Gross filed an amended complaint in the Underlying Action (the "Gross Amended Complaint"). In the Gross Amended Complaint, Gross sets forth the same causes of action based on the same alleged wrongdoing by

the same defendants as the Underlying Complaint. On February 26, 2021, the Gross Action was transferred to the Superior Court of California, County of Santa Clara, Case No. 21CV376485, and a Second Amended Complaint ("SAC") was filed. UF 17.

In the SAC, Gross again makes similar allegations as in the original complaint and alleges that, "In December 2018, Gross demanded the Company's Board of Directors prosecute this action. The Company's Directors, Scott Verges ('Verges') and Allen Benello ('Benello'), suspected that Gross's demand had merit, but the Company did not have the financial resources to prosecute the derivative causes of action against Defendants alleged below." UF 18.

Gross further alleges that "[d]uring 2018, Verges and Benello investigated and unearthed the details and extent of Alderete's mismanagement. Verges and Benello then provided the information [sic] they discovered to all shareholders, including Gross. At this point, shareholders, including Gross, first became aware of Robbins and Stoll's failure to comply with their fiduciary duties to the Company and the shareholders." UF 19.

Gross alleges that, "[i]n early 2019, Gross also informed the Board that the Company should take action against Robbins and Stoll based on their violation of their fiduciary duties to the Company and shareholder[s]. Verges and Benello concluded that the Company had viable claims against Alderete, Robbins and Stoll and that the Company should initiate legal action against them." UF 20.

On November 4, 2020, Gross filed an opposition to a motion to post a bond in the Gross Action. In his opposition, Gross admitted that, "the board in fact, supported Gross's request that it file an action on the derivative claims alleged in the complaint." UF 21. The parties continued to litigate the Gross Action.

As a result of mediation on January 6, 2023, Gross, acting both in his individual capacity and derivatively, entered into a settlement agreement with Robbins and Stoll. Pursuant to the settlement agreement, Robbins and Stoll

assigned their rights under the Policy to Gross, and Gross agreed to share the proceeds of any monetary recovery from Scottsdale with Robbins and Stoll. UF 22. In other words, Robbins and Stoll hope to recover funds from Scottsdale as a result of their own alleged wrongdoing.

On July 20, 2023, Gross's attorney, James Quadra ("Quadra"), filed a declaration in the Gross Action in which he advised the court that "prior to entering into the [settlement] agreement, Gross investigated the claims against Alderete, including interviewing and obtaining relevant documents from witnesses, such as former Flora directors, Scott Verges, Alan Benello, and William Hirsch." UF 23. Also, on July 20, 2023, Gross filed a motion to approve the settlement with Robbins, and Stoll in the Gross Action. In his motion, Gross explain that, "during 2018, Verges and Benello investigated and unearth the details and extent of Alderete's mismanagement, which were provided to the remaining shareholders, including Gross, who first learned at this point about Stoll's and Robbin's failure to comply with their fiduciary duties to the company." UF 24.

According to Gross, before he filed the Gross Complaint and after he resigned as a director of Flora, Verges provided Gross with boxes of documents belonging to Flora. UF 25.

### E. The Coverage Dispute

On August 2, 2019, after Gross became a director of Flora and before he filed the his underlying lawsuit against Flora and its officers and directors, Scottsdale advised Gross that it was withdrawing coverage for his Derivative Demand. UF 26.

On December 16, 2020, before Gross filed his lawsuit, and on May 18, 2021, after Gross filed his lawsuit, Scottsdale advised counsel for Robbins and Stoll that coverage for the Gross Action is barred by the Insured v. Insured Exclusion because the Gross Action was filed by Gross, who was also a member of the Board of Directors of Flora, and therefore is an Insured under the Policy. UF 27. Scottsdale

properly denied coverage for the Gross Action because coverage is barred by the Insured v. Insured Exclusion. UF 28. At the very least, Scottsdale's coverage decision, if not correct, was subject to a genuine dispute. UF 29.

After Gross settled the Gross Action, Gross then filed this action asserting claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) bad faith denial of insurance claim, but there is no evidence that Scottsdale breached the implied covenant or acted in bad faith. UF 30. Gross also asserts a claim for punitive damages, but there is no evidence of malice, oppression or fraud by Scottsdale. UF 31.

## III. LEGAL ARGUMENT

### A. Applicable Standard

Under Rule 56, the moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 580 (1986). A party is entitled to summary judgment when the documentary evidence provided by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 742 (1986). The moving party may meet its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id*. Scottsdale can meet its burden on summary judgment by showing that Gross lacks sufficient evidence to carry his ultimate burden of persuasion at trial; i.e., he does not have evidence from which a jury could find an essential element of the Plaintiffs' claim. FRCP 56(c)(1)(B); *Celotex Corp. v. Catrett*, 477 US 317, 325 (1986).

Once the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co.*, 475 U.S. at 580. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Id*. If the adverse party does not so respond, summary judgment shall be entered against the adverse party. Fed. R. Civ. P. 56(e). Further, the mere

existence of some alleged factual dispute between the parties is not sufficient to overcome an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. Thus, to defeat Scottsdale's Motion, Gross must affirmatively set forth material facts showing there is a genuine issue on which a reasonable jury could find in his favor. *Id*. at 252. Here, the undisputed material facts establish that there is no coverage for the Gross Actions under the Policy.

**B. Gross Cannot Satisfy His Burden of Establishing a Potential for Coverage**

Under California law, the insured bears the burden to establish "the potential of coverage," and thus, a duty to defend. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 300 (1993). The insured must make "a prima facie showing . . . that the underlying action fell within coverage provisions," *Maryland Casualty Co. v. National American Ins. Co.*, 48 Cal.App.4th 1822, 1832 (1996). The duty to defend is not absolute. *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996). This is because "[e]ven in the context of a duty-to-defend case, the burdens of proof are no different than any other motion for summary judgment." *Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F.Supp.2d 803, 814 (N.D. Cal. 2007). The mere existence of a dispute concerning policy interpretation does not create a potential for coverage. *Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*, 176 Cal.App.4th 172, 209 (2009) ("existence of a legal dispute does not create a potential for coverage").

Further, "California law does not require [insurers] absolutely to prove that no claim could ever be asserted by a third party that might fall within the terms of the Policy. Instead, the law requires [insurers] to demonstrate that the claims actually advanced fall outside of the Policy." *Id.* at 813 (emphasis added). Here, the applicable law and undisputed facts discussed below show there is no potential for coverage for the Gross Action under the Policy and that Scottsdale is entitled to summary judgment.

### C. Interpretation of Insurance Contracts

Insurance contracts are contracts governed by the ordinary rules of contract interpretation. *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 37 (1995). An insurance policy is interpreted, like all contracts, to effectuate the mutual intent of the parties. *Silicon Valley Bank v. New Hampshire Ins. Co.*, 203 F.Supp.2d 1152, 1156 (C.D. Cal. 2002). "If contractual language is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992). The interpretation of an insurance policy is a question of law, determined, if possible, solely from the terms of the policy and their clear and explicit meaning (understood in their ordinary and popular sense). *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995). The intent of the parties is to be determined from the plain meaning of the policy's written provisions, construed within the context of the entire contract. *AIU Ins. Co. v. Sup. Ct.*, 51 Cal.3d 807, 821-822 (1990); Civ. Code §§1636-1639, 1641. Here, the Policy definition of Claim is clear and unambiguous and Plaintiff cannot not dispute this. The Policy establishes Scottsdale had no duty to defend the Underlying Defendants in the Gross Action because the Insured v. Insured Exclusion bars coverage under the Policy.

### D. Scottsdale Did Not Breach the Contract Because There is No Potential for Coverage for the Gross Action

In order to succeed on its claim for breach of contract, Gross must prove 1) the existence of a valid contract, 2) plaintiff's performance, 3) Scottsdale's breach, and 4) damage resulting from the breach. *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489 (2006). Here, Gross contends that Scottsdale breached the Policy by declining coverage for the Gross Action. However, Gross cannot establish that Scottsdale breached the Policy, or that he suffered damages caused by the purported breach, because Scottsdale does not owe a duty to defend or indemnify the directors and officers of Flora in Gross's Action.

### E. The Underlying Lawsuit was brought on Behalf of Insureds and Therefore, the Insured versus Insured Exclusion Bars Coverage

The Insured vs. Insured Exclusion applies to "any **Claim**… brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity[.]" UF 5. (Policy, Doc. 1-2, p. 27, D&O Coverage Section, § C.1.e.) (bold original). California courts have found such exclusion to be unambiguous and enforceable. *See Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 244 F.3d 715, 721-723 (9th Cir. 2001) (barring coverage under an unambiguous insured vs. insured exclusion for "any claim brought against one or more past, present or future directors or officers, by the corporation, its subsidiaries or successors or by one or more past, present or future directors or officers") (emphasis and internal quotations omitted); *VierraMoore, Inc. v. Cont'l Cas. Co*., 940 F. Supp. 2d 1270, 1282-1284 (E.D. Cal. 2013) (no duty to defend due to the policy's unambiguous insured vs. insured exclusion).

The Ninth Circuit Court of Appeals has further noted the purpose of Insured vs. Insured Exclusions:

> Insured versus insured exclusions are boilerplate in [D&O] and other kinds of liability policies… The exclusion arose in D & O policies as a reaction to several lawsuits in the mid-1980s in which insured corporations sued their own directors to recoup operational losses caused by improvident or unauthorized actions. Such lawsuits created problems of moral hazard, collusion, and unintended expansion of coverage. The reasonable expectations of the parties [are] that they [are] protecting against claims by outsiders, not intracompany claims.

*Biltmore Assocs., LLC v. Twin City Fire Ins. Co*., 572 F.3d 663, 668 (9th Cir. 2009) (barring coverage under a similar insured vs insured exclusion).

Accordingly, the threshold issue for the Court is whether the claim—the Grsoss Action—was brought by or on behalf of, or at the direction of, any Insured. That

question is straightforward and can be answered affirmatively as a matter of law. There is no dispute that Gross was a director of Flora and therefore, an Insured.

"Insureds" include "Directors & Officers" of Flora Bioscience—i.e., any current, former, or future "duly elected or appointed director, officer, or similar executive of [Flora Bioscience], or any member of the management board[.]" (Policy, Doc. 1-2, p. 25, § B.4.). Gross is a former director of Flora Bioscience. UF __ (Underlying Am. Compl., ¶¶ 1, 34; Compl., Doc. 1, ¶ 23; Answer, Doc. 26, ¶ 25).

By its plain language, the Insured v. Insured Exclusion applies to a Claim "brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity." (Emphasis added). That is, the Insured v. Insured Exclusion is not only applicable to a Claim originally brought by an Insured, but also to a Claim that is brought by an uninsured claimant and later taken over by an Insured or, as here, brought by a claimant who later becomes an Insured. Gross's interpretation of the exclusion would read the words "or maintained" out of the Exclusion and that would be improper. See e.g., Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 753 (1993) (citing *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990) ("The way we define words should not produce redundancy, but instead should give each word significance.")); *Mirpad, LLC v. California Ins. Guar. Assn.*, 132 Cal. App. 4th 1058, 1073 (2005) ("An interpretation of the policy that creates an ambiguity where none existed by rendering words redundant or superfluous violates all rules of construction." ); *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 818 (1994) ("[T]he California Supreme Court unanimously reaffirmed the fundamental rule that one cannot read a policy term in such a way that would render some of its words meaningless.").

Whether a claimant serves as a director or officer at the time the alleged Wrongful Acts were committed or when a lawsuit is filed is irrelevant because the

term Directors and Officers is defined to include any person who was, now is, or shall become a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company. Neither the Insured v. Insured Exclusion nor the definition of Insured imposes a temporal limitation on who constitutes an Insured for purposes of the Insured v. Insured Exclusion.

Scottsdale initially assigned counsel to investigate the Derivative Demand because Gross brought the Derivative Demand when he was not an Insured, but then properly withdrew from the defense when Gross became an Insured. That is consistent with how the Insured v. Insured Exclusion is written to operate. The fact that Gross was not an Insured at the time he sent the Derivative Demand to Flora is immaterial because the Insured v. Insured Exclusion says that it applies to a Claim brought or maintained by an Insured "in any capacity." One cannot simply write that language out of the Exclusion. The Ninth Circuit Court of Appeals and other courts around the country have routinely held that similar Insured v. Insured Exclusions apply regardless of whether a claim is brought by a claimant in an "insured capacity." See e.g. *Biltmore Assoc., LLC v. Twin City Fire Ins. Co*., 572 F.3d 663, 669 (9th Cir. 2009) (holding that insured v. insured exclusion applied regardless of capacity in which the claim was brought); *LaFon v. American Casualty Co*., No. SACV 93-42-GLT (C.D. Cal. Sept. 17, 1993), aff'd, 73 F.3d 369 (9th Cir. 1995) (rejecting the argument that the plaintiff was suing as an individual and not as an officer or director, and stating "[T]he language of the Policy is controlling: The Policy's Insured vs. Insured Exclusion bars 'any claim made against the Entity and/or any Insured by any other Insured and/or the Entity.'"); *Intelligent Digital Sys., LLC v. Beazley Ins. Co*., 716 F. App'x 1, 4 (2d Cir. 2017) (2nd Cir. Sept. 19, 2017) (holding that an insured v. insured exclusion applied to a Claim brought by a director of the insured entity even if the Claim was not brought in the director's capacity as an insured). Thus, the capacity in

which Gross initially served his Derivative Demand has no bearing on the Insured v. Insured Exclusion.

Thus, the Insured vs. Insured Exclusion applies to bar coverage for the Gross Action.

**F. Scottsdale is Entitled to Judgment as a Matter of Law on Plaintiff's Bad Faith Claims**

In his second and third causes of action for bad faith, Gross asserts that Scottsdale breached the covenant of good faith and fair dealing (i.e., acted in bad faith) by failing to defend and indemnify Robbins and Stoll. However, the essential elements of a cause of action for bad faith are: (1) the withholding of benefits which are due under the policy; and (2) the withholding of such benefits unreasonably or without proper cause. *Waller*, 11 Cal.4th 1 at 35-36; *Love v. Fire Ins. Exch*., 221 Cal.App.3d 1136, 1151 (1990). Thus, a cause of action for bad faith cannot be maintained unless policy benefits are due under the applicable contract. *American Medical International, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 244 F.3d 715, 719 (9th Cir. 2001), citing *Waller*, 11 Cal.4th at 18; *Love*, 221 Cal.App.3d at 1151-1153. Since, as demonstrated above, Scottsdale owed no duty to defend or indemnify the Underlying Defendants in the Gross Action, Gross cannot maintain an action for bad faith.

Even if Gross was able to establish that the Policy provides coverage for the Underlying Actions (it cannot), Gross would still need to show that Scottsdale's claims handling was *unreasonable* in order to establish a claim for bad faith — an untenable proposition given the facts of this claim and applicable law. First, the genuine dispute doctrine applies to preclude a finding of bad faith whenever there is a genuine dispute as to the facts or the law. *Chateau Chamberay Homeowners Ass'n v. Associated Indem. Co*. 90 Cal.App.4th 335 (2001). ["Where there is a genuine issue of an insurer's liability under a policy, a court can conclude that an insurer's actions in denying the claim were not unreasonable as a matter of law."]

The undisputed evidence is that Scottsdale's claims handling was reasonable. Upon Flora's tender of the Demand Letter, Scottsdale appointed defense counsel to investigate and reserved its rights. Scottsdale continued defending under a reservation of rights while it reviewed the detailed allegations therein, performed an investigation, and advised Flora of its coverage position. It was not until Scottsdale received notice that Gross became a director that it withdrew coverage. These facts belie any claim that Scottsdale's claims handling was unreasonable in any fashion, and therefore, Gross cannot establish a claim for bad faith.

**G. Scottsdale is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Punitive Damages**

While Scottsdale's conduct does not support a claim for bad faith (as discussed above), there is certainly no question that its conduct cannot form the basis of a claim for punitive damages. To recover punitive damages, under Civil Code § 3294, a plaintiff must prove by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294(a); *Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1121 (2001). "[C]lear and convincing evidence requires a finding of high probability." *Shade Foods, Inc. v. Innovative Products Sales & Marketing*, 78 Cal.App.4th 847, 891 (2001). Consequently, "any evidence submitted in response to a motion for summary adjudication must necessarily meet that standard." *Basich*, 87 Cal.App.4th at 1121. In the context of a bad faith claim, even an adequate showing of bad faith is not enough to warrant punitive damages. *Patrick v. Maryland Casualty Co.*, 217 Cal.App.3d. 1566, 1575 (1990). The conduct must rise to the level that it "could be described as evil, criminal, recklessly indifferent to the rights of the insured, or [having] a vexatious intention to injure." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1288 (1994); *see also*, *Patrick*, 217 Cal.App.3d at 1576 (Punitive damages cannot be awarded even where the insurer's "claims handling practices were shoddy, and … its handling of the claim … was at times witless and infected with systems of bureaucratic inertia and

inefficiency.”).

The facts and evidence in this case utterly fail to meet the high standard required for punitive damages. Regardless of whether this Court ultimately finds that Scottsdale was wrong in its coverage position, or that it acted *unreasonably* in its handling of the Gross Action (i.e. to support a bad faith claim), the evidence does not support a finding that Scottsdale acted with malice, oppression or deceit so as to justify an award of punitive damages. Accordingly, Scottsdale prays this Court perform its gatekeeper function and grant Scottsdale’s Motion as to Gross’s claim for punitive damages.

## IV. <u>CONCLUSION</u>

Scottsdale respectfully requests that the Court grant its Motion, or in the alternative grant partial summary judgment.

October 9, 2025 COZEN O’CONNOR

By: *<u>/s/ Valerie D. Rojas</u>*
Valerie D. Rojas
Attorney for Defendants
SCOTTSDALE INSURANCE COMPANY