JAMES A. QUADRA, State Bar No. 131084
REBECCA COLL, State Bar No. 184468
ROBERT D. SANFORD, State Bar No. 129790
QUADRA & COLL, LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 426-3502

Attorneys for Plaintiff
TERRY GROSS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY GROSS, individually and derivatively on behalf of FLORA BIOSCIENCE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation, and DOES 1-10, inclusive,<br><br>Defendants,<br><br>and<br><br>FLORA BIOSCIENCE, INC., a Delaware corporation.<br><br>Nominal Defendant. | Case No. 24-cv-02069-EJD<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>DATE: November 19, 2025<br>TIME: 9:00 a.m.<br>DEPT: 4 |

**Table of Contents**


I. INTRODUCTION ........ 4

II. STATEAMENT OF FACTS ........ 5

- A. The Malfeasance of John Alderete, Marc Stoll and Robert Robbins in the Management of Flora ........ 5
- B. Flora's Tender to Scottsdale of Gross's Claim Against Alderete, Stoll, and Robbins ........ 6
- C. Scottsdale's Failure to Timely Accept or Deny the Claim During the Investigation ........ 7
- D. With Klass's Approval, Gross Becomes a Flora Director for 21 Days During Which Time He Undertook No Action Regarding the Claim ........ 8
- E. Scottsdale's Tardy Denial of the Claim ........ 10
- F. Gross Files and Settles a Derivative Action Brought on Behalf of Flora Against Alderete, Stoll and Robbins ........ 10

III. ARGUMENT ........ 11

- A. Scottsdale Fails to Meet Its Burden that It Is Entitled to Summary Judgment as a Matter of Law ........ 11
- B. Triable Issues of Material Fact Exist Whether Scottsdale Diligently Handled the Claim. ........ 12
- C. Triable Issues of Fact Exist Whether Scottsdale Misrepresented to Flora that Gross Could Become a Director in Order to Invoke the Insured v. Insured Exclusion in Bad Faith ........ 14
- D. The Insured v. Insured Exclusion Does Not Apply to Gross's Claim as a Matter of Law. ........ 15
- E. There Is A Triable Issue of Fact Regarding Whether Scottsdale Acted with Fraud, Entitling Him to Punitive Damages. ........ 18

IV. CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Cases**

*Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 244 F.3d 715 (9th Cir. 2001) .....17

*Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152 (9th Cir.2002) .......................................15

*AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840 (9th Cir. 2020) ....................16

*Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663 (9th Cir. 2009) .........................18

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335 ........12

*Free v. Republic Ins. Co.*, 8 Cal. App. 4th 1726 (1992) ..............................................................14

*Harris v. Gulf Ins. Co.*, 297 F. Supp. 2d 1220 (N.D. Cal. 2003) ......................................... passim

*Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062 (2007) ..........................................................13

*Lee v. Fid. Nat'l Title Ins. Co*., 188 Cal. App. 4th 583 (2010).....................................................12

*Macey v. Allstate Prop. & Cas. Ins. Co.,* 220 F. Supp. 2d 1116 (N.D. Cal. 2002).......................14

*MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635 (2003)..................................................11, 16

*Moradi–Shalal v. Fireman's Fund Ins. Companies* 46 Cal.3d 287 (1988)...................................19

*Paper Savers, Inc. v. Nacsa,* 51 Cal.App.4th 1090 (1996)..........................................................14

*Rattan v. United Servs. Auto. Ass'n,* 84 Cal. App. 4th 715 (2000) ...............................................13

*See, e.g., Adams v. Allstate Ins. Co.,* 187 F. Supp. 2d 1207 (C.D. Cal. 2002)..............................14

*Wilson v. 21st Century Ins. Co*., 42 Cal. 4th 713 (2007) ............................................................14

**Regulations**

10 CCR §2695.7...........................................................................................................................12

## I. INTRODUCTION

Defendant Scottsdale Insurance Company ("Scottsdale") wrongly argues that, as a matter of law, Scottsdale is not obligated under the Business and Management Indemnity Policy ("Policy") issued by Scottsdale to Nominal Defendant Flora Bioscience, Inc. ("Flora" or the "Company") to cover the damages caused by John Alderete ("Alderete"), a former director and officer of Flora, and by Marc Stoll ("Stoll") and Robert Robbins ("Robbins"), former Flora directors (the "Claim"). Flora properly tendered to Scottsdale the Claim of Plaintiff Terry Gross ("Gross"), a Flora shareholder, but Scottsdale failed to handle the Claim timely, as required by 10 California Code of Regulations ("CCR") §2695.7. Instead, well after Scottsdale should have accepted the Claim, Scottsdale misrepresented to a Flora director, Scott Verges ("Verges"), that Gross could become a Flora director without affecting coverage of his Claim and without any mention that Scottsdale would later try to deprive Flora of insurance coverage under the Policy because Gross was briefly a director. Relying on Scottsdale's misrepresentation, Gross served as a Flora director for three weeks because Flora had no directors, then resigned because Flora could not obtain a new directors and officers ("D&O") insurance policy. Gross took no action regarding the Claim and gained no advantage in connection to his Claim while he was Flora sole director.

Scottsdale misled Flora about appointing Gross as a director with the knowledge that an attorney retained by Scottsdale to investigate Gross's claims, Joseph P. Breen ("Breen"), had already concluded that a shareholder derivative action against Alderete, Stoll and Robbins had merit and likely would be successful. Nearly a year after he resigned as a director, Gross filed just such a derivative action on Flora's behalf for breach of fiduciary duty against Alderete, Stoll, and Robbins. With court approval, Gross settled the derivative action with Alderete, Robbins and Stoll for $4.5 million, which Gross agreed to not collect in exchange for an assignment of their claims against Scottsdale for failing to honor its obligation to provide coverage to them under the Policy.

An issue of material fact exists whether Scottsdale acted in bad-faith by inducing Flora to appoint Gross as a director to then deny coverage for damages by wrongly and in bad faith invoking the "Insured v. Insured" exclusion under the Policy where Scottsdale's own investigation revealed that a derivative action had merit.

Not only is Scottsdale barred by its bad faith from relying on the Insured v. Insured exclusion, Scottsdale fails to meet its burden to show that the exclusion applies under an exception in the Policy to the Insured v Insured exclusion for derivative actions brought without the assistance of Flora or its directors or officers. *Harris v. Gulf Ins. Co.*, 297 F. Supp. 2d 1220, 1222-27 (N.D. Cal. 2003). Scottsdale does not even acknowledge the derivative action exception found in the Policy §C(1)(e)(i), much less establish, as required, that the Insured v. Insured exclusion "conspicuously, plainly and clearly" apprised Flora that Gross's brief tenure as director, after Flora tendered the Claim to Scottsdale, would result in a denial of coverage for the Claim. *Id.* at 1225. The Insured v. Insured exclusion is designed to preclude coverage of claims resulting from collusion between the insured corporation and its officers and directors. *Id.* at 1226-1227. Gross did nothing while a Flora director to collude with Flora, which was a defunct corporation by that point, with no directors, officers, or employees. The derivative action exception to the Insured v. Insured exclusion applies to the Claim and the subsequent derivative action filed by Gross based on that Claim. Accordingly, Scottsdale cannot invoke the Insured v Insured exclusion and is not entitled to summary judgment.

## II. STATEMENT OF FACTS

### A. The Malfeasance of John Alderete, Marc Stoll and Robert Robbins in the Management of Flora

Flora was a privately held medical diagnostics company formed with an equity investment over $5.2 million from its shareholders, including Gross, to develop low cost, rapid tests to accurately detect fungal infections. (Declaration of Terry Gross in Opposition to Motion for Summary Judgment ("Gross Decl."), ¶¶1-2.) Flora had a valuable technology license with the University of Texas which gave Flora the right to use, develop, manufacture and market all diagnostic tests arising out of certain patents effective in identifying pathogenic vaginal yeast infections. (*Id.* at ¶2.) The entire value of the Company was dependent on the validity, existence, and enforceability of this license; if the license were terminated, the Company would have no value. (*Id.*)

John P. Alderete (Alderete") served as Flora's Chief Executive Officer and Chairman of the Board of Directors, and he owned a majority of Flora's common shares. (Gross Decl., ¶3.) Alderete exercised control over the business affairs of the Company, which he abused by misinforming

shareholders, engaging in self-dealing, and grossly mismanaging the Company. (*Id.*; *see* First Amended Complaint ("FAC"), ¶21, Ex. F, ¶¶9-41 [operative complaint in the underlying action].) Alderete's misconduct led to the termination of the License and collapse of the Company as a viable business, thereby violating Alderete's fiduciary duty to the Company and its shareholders. (*Id.*) Robert Robbins ("Robbins") and Marc Stoll ("Stoll") were directors of Flora during the period of Alderete's malfeasance. (*Id.* at ¶4.) Robbins and Stoll breached their fiduciary duty to the Company and its shareholders by failing to properly supervise and control Alderete. (*Id.*) Scott Verges, a former Flora shareholder and director, investigated and documented in detail Alderete's wrongdoing. (Declaration of Scott Verges in Opposition to Motion for Summary Judgment ("Verges Decl."), ¶2, Ex. A.)

Scottsdale was aware of Alderete, Stoll's, and Robbins' malfeasance. As referenced above, a law firm retained by Scottsdale to investigate Alderete, Gordon Rees Scully Mandukhani, LLP ("G&R"), uncovered facts that Alderete made material misrepresentations to Flora shareholders and directors, engaged in self-dealing, and mismanaged Flora. (*Id.* at ¶13, Ex. F ("G&R Investigation Memo"); Verges Decl., ¶¶5-12, Exs. D-G.) The G&R Investigation Memo, dated May 21, 2019 and prepared by Breen (a G&R attorney), concluded in part:

> [a] shareholder's derivative suit on behalf of the shareholders against Alderete, and possibly against other former directors, likely would be successful in establishing both liability and damages.

(Verges Decl., ¶11, Ex. G.) Moreover, Breen had concluded that Gross Claim was meritorious as early as April 10, 2019. (Verges Decl., Ex. E.) He also admitted to Gross' attorney, James A. Quadra ("Quadra") that he was in communication with Scottsdale about the Claim. (Declaration of James A. Quadra in Opposition to Motion for Summary Judgment ("Quadra Decl."), ¶7.)

**B. Flora's Tender to Scottsdale of Gross's Claim Against Alderete, Stoll, and Robbins**

Breen's investigation resulted from Gross's demand in a letter dated December 17, 2018 to Flora from his attorney Quadra that the Company file an action against Alderete to recover damages suffered by Flora as a result of his malfeasance or alternatively allow Gross to proceed with a derivative action. (Gross Decl., ¶5; Verges Decl., ¶3, Ex. B; "Quadra Decl.", ¶2.) Flora's Board of Directors, Verges and Allen Benello, tendered the Demand Letter to Scottsdale by letter dated

December 20, 2018 ("Claim"). (Verges Decl., 4, Ex. C.) In January 2019, Aaron Klass ("Klass"), a Senior Claims Specialist with Scottsdale, contacted Verges and informed him that Klass would be Scottsdale's contact for Flora regarding the Claim and that Scottsdale was retaining G&R to investigate the Claim. (Verges Decl., ¶5.) Shortly thereafter, Breen informed Verges that he would investigate the claims made in the Demand Letter. *(Id.)* At a meeting held on January 25, 2019 with Breen, Verges and Quadra, Gross clarified his Demand Letter to ensure that Flora also take legal action against Stoll and Robbins for their failure to oversee Alderete and prevent his malfeasance or allow him to proceed with a derivative action against all of them. (Gross Decl., ¶6; Verges Decl., ¶¶6-7; Quadra Decl., ¶¶3-4.)

**C. Scottsdale's Failure to Timely Accept or Deny the Claim During the Investigation**

On about March 15, 2019, nearly three months after Flora tendered the Claim to Scottsdale, Verges received a letter dated March 15, 2019 from Klass. (Verges Decl., ¶9, Ex. D.) Klass's March 15, 2019 letter was the first written communication received by Flora from Scottsdale regarding Scottsdale's handling and investigation of the Claim. (Verges Decl., ¶9.) Scottsdale did not notify Flora prior to this letter whether it would accept or deny coverage for the Claim. (*Id.*) During Verges's tenure as a Flora director until about May 2019, Scottsdale never advised Flora whether it would accept or deny the Claim, that there was a statutory deadline to accept or deny the Claim, or that Scottsdale required additional time to determine whether to accept or deny the Claim. (*Id.*) In his March 15, 2019 letter, Klass confirmed that Scottsdale had retained G&R to investigate the Claim. (*Id.* at ¶9, Ex. D.)

During the course of his investigation, Breen communicated with Verges via telephone and email regarding his investigation and emailed drafts of his investigation report before it was finalized on May 21, 2019. (Verges Decl., ¶10, Exs. F-G.) On April 10, 2019, Breen emailed Verges a draft report that concluded that:

> Alderete's general conduct, continual failure to perform in accordance with the milestones he set, and apparent willingness to act without proper Board approval, suggest that a suit on behalf of the shareholders against Alderete, and possibly against Stoll, would be successful in establishing both liability and damages in amounts in excess of the policy limits."

(Verges Decl., ¶10, Ex. E.)

From Breen's communication, Verges understood that Breen had determined at least as early as April 10, 2019 that the Claim was valid. (*Id.* at 12.) Verges also understood that Breen was communicating the progress of his investigation to Scottsdale. (*Id.*)

**D. With Klass's Approval, Gross Becomes a Flora Director for 21 Days During Which Time He Undertook No Action Regarding the Claim**

In March 2019, Verges and Benello decided to sell their shares in Flora and resigned as Flora directors. (Verges Decl., ¶13; Gross Decl., ¶7.) As Gross was the only shareholder who had expressed any interest in protecting the interest of Flora, Verges inquired if Gross was interested in purchasing Verges's and Benello's shares and becoming a director of Flora. (Verges Decl., ¶13.) Gross stated that he was willing to become a director only if it would not adversely impact insurance coverage of his Claim. (Verges Decl., ¶13; Gross Decl., ¶7.) In May 2019, Verges sent Gross a draft of a resolution that would memorialize his agreement to become a director of Flora, which Gross approved with edits that included the condition that Scottsdale affirmatively confirm Gross's position as director would not vitiate or adversely affect his right to pursue the Claim. (Verges Decl., ¶14, Ex. H; Gross Decl., ¶9.).)

Before Gross formally agreed to become a director, he requested that Verges contact Scottsdale to determine Scottsdale's position as to the impact on insurance coverage of the Claim if Gross became a director. (Verges Decl., ¶15; Gross Decl., ¶7.) Per Gross's request, Verges spoke by telephone with Klass and explained that he and Benello were resigning as directors and selling their shares to Gross, and that Gross had agreed to become Flora's sole director only if it did not adversely affect his right to pursue his Claim or the insurance coverage for the Claim. (Verges Decl., ¶15.) Verges told Klass that, in order to avoid any conflict due to Gross stepping in as a director, Verges was willing to continue to act on Flora's behalf as the contact with Scottsdale regarding the Claim and would waive any claim to any recovery if Gross filed a derivative action. (*Id.*)

In response, Klass informed Verges that Scottsdale did not object to this plan and stated that it was common to have this situation in closely-held companies. (Verges Decl., ¶16.) Klass further represented that Gross's appointment as a director would not adversely affect the Claim or coverage issues relating to the Claim, and that Verges' agreement to remain Flora's point of contact with Scottsdale regarding the Claim would be acceptable to ensure that Gross becoming a director would

not adversely affect the Claim or related coverage issues. (*Id.*) During Verges' conversation with Klass, Klass never stated that Gross's appointment as a Flora director would in any way jeopardize insurance coverage for the Claim, nor did he state that at any other time. (*Id.* at ¶18.) Klass never advised Verges that Scottsdale would take the position that Gross becoming a director months after his Claim was submitted to Flora, and well after Breen had determined that the Claim was valid, negated coverage under the Policy's Insured vs Insured exclusion. (*Id.*)

In reliance on Klass's representations, Verges informed Gross that Scottsdale had no objection to Gross becoming a director, which would not affect the Claim or any coverage issues concerning the Claim. (Verges Decl., ¶17, Ex. I.) In an email dated May 21, 2019, Verges informed Gross that:

> The Investigation Memo [prepared by G&R] has been delivered to the insurer and I have spoken with the D & O representative explaining the plan to transfer the shares and appoint Terry to the Board. They had no objection and said that in tightly held companies it is not uncommon to have this situation.

(*Id.*)

Gross agreed to serve as Flora's sole director in reliance on Klass's representations to Verges. (Gross Decl., ¶¶6-8, Ex. A.) Gross never would have agreed to serve as director if he had known that Scottsdale would later unlawfully use his appointment as a pretext to deny the Claim. (*Id.* at ¶7.)

Gross served as Flora's director for only three weeks, from May 22, 2019 until June 12, 2019, when he resigned because Flora was unable to obtain new D&O insurance. (Gross Decl., ¶10, Ex. B.) During the three weeks that Gross served as Flora's director, he took no action regarding any aspect of the Claim. (*Id.* at ¶10.) Since Gross resigned as Flora's sole director, the Company has had no directors. (*Id.*)

The evidence shows that Klass had decided to deny coverage under the Insured v. Insured exclusion at or about the same time that he assured Verges that Gross could become Flora's director without adversely affecting coverage of the Claim. During a phone conversation with Quadra on May 22, 2019, Breen stated that he had concluded that the Claim had merit, but that Flora lacked the resources to bring an action against Alderete, Stoll and Robbins and Gross was free to proceed with a derivative claim. (Quadra Decl., ¶5.) . Breen also informed Quadra that Scottsdale would be raising

coverage issues and mentioned the Insured v. Insured exclusion. (Quadra Decl., ¶¶5-6.) Breen's contact at Scottsdale was Klass. (*Id.* at ¶7, Ex. A.)

**E. Scottsdale's Tardy Denial of the Claim**

Scottsdale denied the Claim by letter to Gross dated August 2, 2019, nearly eight months after Flora tendered the Claim to Scottsdale. (Gross Decl., ¶11, Ex. C.) Gross received the letter from Klass, who informed him that Scottsdale was denying any insurance coverage for the Claim under "Section C.1.e. of the D&O Coverage Section" of the Policy based on the incorrect statement that:

> [y]ou are a current director of Flora and a **Director and Officer** and an **Insured**. As such, this matter was brought or maintained by or at the direction of an **Insured**, and the exclusion [in D&O Coverage §C.1.e.] applies to this matter. None of the exceptions to the exclusion are applicable. Thus, <u>there is no coverage for any of the **Insured** under the D&O Coverage Section for this matter</u>.

(*Id.* [emphasis in original].)

Scottdale's stated grounds for denying coverage were incorrect in at least three respects. First, in August 2019, Gross was not a current Flora director. (*Id.* at ¶9.) Second, Gross had never been a Flora officer. (*Id.*) Third, during Gross's brief tenure as a Flora director, he did not bring or maintain this "matter" or direct that the "matter" be brought or maintained. (*Id.*)

**F. Gross Files and Settles a Derivative Action Brought on Behalf of Flora Against Alderete, Stoll and Robbins**

Gross was informed on May 22, 2019 that he was free to bring a derivative action against Alderete, Stoll and Robbins. (Quadra Decl., ¶5.) He received a copy of the G&R Investigative Memo sometime in late 2019 or early 2020, which confirmed the validity of the Claim. (Gross Decl., ¶13.) On May 11, 2020, Gross filed an action, individually and derivatively on behalf of Flora, against Alderete, Stoll and Robbins in *Gross v. Alderete, et al.*, Alameda County Superior Court, Case No. RG20062143 which was subsequently transferred to Santa Clara County Superior Court, Case No. 21CV376485 (the "Underlying Action"). (*Id.*) With court approval, Gross settled the Underlying Action for $4.5 million in exchange for a dismissal of the Underlying Action. (*Id.* at ¶¶15-16.) Gross agreed not to collect the settlement amount in exchange for an assignment of Alderete's, Stoll's, and Robbins' bad faith rights against Scottsdale under the Policy. (*Id.*)

## III. ARGUMENT

### A. Scottsdale Fails to Meet Its Burden that It Is Entitled to Summary Judgment as a Matter of Law

Scottsdale fails to meet the well-established standard for granting summary judgment:

> Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am*., 815 F.2d 1285, 1288–89 (9th Cir.1987).
>
> Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg*, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.

*Harris*, *supra*, 297 F. Supp. 2d at 1223.

Since Scottsdale seeks to deny coverage based on the Insured v. Insured exclusion, Scottsdale bears the burden "to establish that the [C]laim is specifically excluded." *Id.* at 1226, *quoting MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 648 (2003).

> Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. *See UA Local 343 v. Nor–Cal Plumbing, Inc*., 48 F.3d 1465, 1471 (9th Cir.1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *See id.; see also Int'l Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1264–65 (5th Cir.1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." *Id.* This standard does not change merely because resolution of the relevant issue is "highly fact specific."

(*Harris*, *supra*, 297 F. Supp. 2d at 1224.)

Accepting the evidence offered by Gross as true and drawing all reasonable inferences in favor of Gross, Scottsdale's motion must be denied because evidence shows that Scottsdale acted in bad faith by failing to timely accept or deny the Claim and by misleading Flora and Gross as to the effect on coverage of Gross's appointment as director. Furthermore, the Insured v. Insured exclusion does

not even apply because the evidence shows that the Claim falls within the exception for derivative actions, an exception which Scottsdale never addresses.

**B. Triable Issues of Material Fact Exist Whether Scottsdale Diligently Handled the Claim.**

An insurer investigating a claim has a duty to thoroughly investigate all possible bases that might support coverage, and failure to do so can constitute bad faith. *See Egan v. Mutual of Omaha Ins. Co*. 24 Cal.3d 809, 819–820 (1979); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*. (2000) 78 Cal.App.4th 847, 880 (an insurer "may not ignore evidence which supports coverage). "[T]he ultimate test of [bad faith] liability in the first party cases is whether the refusal to pay policy benefits [or the alleged delay in paying] was unreasonable." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co*., 90 Cal. App. 4th 335, 346 (parenthetical in original; citations and quotation marks omitted). "'[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact' [except in the] exceptional instance when 'only one reasonable inference can be drawn from the evidence.'" *Lee v. Fid. Nat'l Title Ins. Co*., 188 Cal. App. 4th 583, 599 (2010), *quoting Chateau Chamberay*, *supra*, 90 Cal.App.4th at 346.

Scottsdale is not entitled to summary judgment because triable issues of fact exist whether Scottsdale acted in bad faith by violating its legal obligation to "conduct and diligently pursue a thorough, fair and objective investigation." (10 CCR §2695.7(d).) As discussed below, a jury can draw a reasonable inference that Scottsdale improperly denied coverage to avoid paying the covered Claim.

The undisputed evidence in fact shows that Scottsdale did not timely resolve the Claim, which included derivative claims, as required by California law. An insurer must accept or deny a claim within 40 days of its receipt as required by 10 CCR §2695.7(b), which provides in relevant part:

> (b) Upon receiving proof of claim, every insurer … shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety.
>
> > (1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to

> the claim. Every insurer that denies or rejects a third party claim, in whole or in part, or disputes liability or damages shall do so in writing.

10 CCR §2695.7.

Scottsdale cannot deny that it failed to accept or deny the Claim within forty days of Claim's tender on December 20, 2018, instead waiting 85 days to simply confirm to Flora on March 15, 2019 that Scottsdale retained a law firm to investigate the Claim and delaying completion of its investigation report until May 22, 2019. Gross was not a Flora director during that entire period of Scottsdale's investigation of the Claim, far longer that the 40-day period specified by law in which Scottsdale had to resolve the Claim.

Scottsdale could have notified Flora that its investigation of the Claim would take longer than 40 days, as allowed under 10 CCR §2695.7(c)(1) which provides:

> [i]f more time is required than is allotted in subsection 2695.7(b) to determine whether a claim should be accepted and/or denied in whole or in part, every insurer shall provide the claimant, within the time frame specified in subsection 2695.7(b), with written notice of the need for additional time. This written notice shall specify any additional information the insurer requires in order to make a determination and state any continuing reasons for the insurer's inability to make a determination. Thereafter, the written notice shall be provided every thirty (30) calendar days until a determination is made or notice of legal action is served. If the determination cannot be made until some future event occurs, then the insurer shall comply with this continuing notice requirement by advising the claimant of the situation and providing an estimate as to when the determination can be made.

However, Scottsdale did not provide such notice, either within the initial 40-day claim investigation period or any subsequent 30-day period. Instead, Scottsdale delayed (wrongly) any decision on the Claim until it learned that Gross became Flora's only director, so Scottsdale could deny (wrongly) coverage under the Insured v. Insured exclusion. Scottsdale's undisputed violation of California regulations governing its handling of the Claim is admissible evidence of bad faith which a jury can and should consider. *Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1078 (2007); *see also Rattan v. United Servs. Auto. Ass'n,* 84 Cal. App. 4th 715, 724 (2000) (evidence of insurer's violation of claims practices regulations "may be used by a jury to *infer* a lack of reasonableness")( emphasis in original). Scottdale's motion should be denied for this reason alone.

**C. Triable Issues of Fact Exist Whether Scottsdale Misrepresented to Flora that Gross Could Become a Director in Order to Invoke the Insured v. Insured Exclusion in Bad Faith**

When an insured inquires about coverage and the insurer has superior knowledge about the scope of coverage, the insurer has 'the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy." *Macey v. Allstate Prop. & Cas. Ins. Co.,* 220 F. Supp. 2d 1116, 1126 (N.D. Cal. 2002), *citing Paper Savers, Inc. v. Nacsa,* 51 Cal.App.4th 1090, 1097 (1996) (an insurer's "agent assumed a 'special duty' to the insured if the agent misrepresented the meaning and effect of a particular endorsement."). Insurers are bound by "a special duty … requiring them to use reasonable care" in responding to an insured's inquiries about coverage. *Free v. Republic Ins. Co*., 8 Cal. App. 4th 1726, 1729 (1992). When an insurer goes beyond failing to use reasonable care in responding to coverage inquiries and misrepresents the existence of coverage, the insurer is liable for bad faith. *See, e.g., Adams v. Allstate Ins. Co.,* 187 F. Supp. 2d 1207, 1215 (C.D. Cal. 2002) (court's consideration of bad faith includes whether "the insurer's employees lie … to the insured").

While Scottsdale's delay in handling the Claim is sufficient to preclude summary judgment, there is further evidence of Scottsdale's bad faith which can be resolved only by a jury trial. Scottsdale's Senior Claims Specialist, Aaron Klass, misrepresented to Flora's director, Scott Verges, that Gross could become a Flora director without affecting the viability of the Claim or coverage relating to the Claim. Klass made no mention that Scottsdale could seize upon the Gross's appointment as a pretext to deny coverage under the Policy's Insured v. Insured Exclusion provision.

Ignoring Klass's misrepresentations, Scottsdale wrongly argues that it cannot be liable for bad faith because a "genuine dispute" exists as a matter of law whether the Insured v. Insured Exclusion applies. Under the genuine dispute rule, "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Wilson v. 21st Century Ins. Co*., 42 Cal. 4th 713, 723 (2007) *quoting Chateau Chamberay*, *supra*, 90 Cal.App.4th at 347.

> The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the <u>insurer's position is maintained in good faith and on reasonable grounds</u>. [*Chateau Chamberay*, *supra*, 90 Cal.App.4th at 348–349; *Guebara v. Allstate Ins. Co.*,

> 237 F.3d 987, 996 (9th Cir. 2001)] Nor does the rule alter the standards for deciding and reviewing motions for summary judgment. "The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. [Citation.] ... On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably."

*Wilson*, *supra*, 42 Cal. 4th at 724 *quoting Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161–1162 (9th Cir.2002) (footnote omitted).

Here, a jury can (and will) conclude that Scottsdale did not act in good faith and on reasonable grounds when Klass purposely misled Flora and falsely stated that Gross becoming a Director would not affect coverage for the Claim under the Policy. A triable issue of fact exists whether Scottsdale hid its plan to deny the Claim based on Gross's appointment as director. Gross will prove at trial that, despite (and because of) Scottsdale's receipt of the G&R Investigative Memo and draft reports showing Flora likely to prove damages from Alderete's malfeasance and Stoll's and Robbins' failure to oversee Alderete, damaged Flora, Scottsdale failed to timely resolve the Claim, misled Flora into appointing Gross as a Director, then denied the Claim in bad faith. Scottsdale is not entitled to summary judgment of any cause of action or the claim for punitive damages.

**D. The Insured v. Insured Exclusion Does Not Apply to Gross's Claim as a Matter of Law.**

In wrongly claiming that the Insured v. Insured exclusion precludes coverage, Scottsdale ignores the pertinent exception to the exclusion which does not apply to derivative actions brought by a shareholder of the insured:

> **Insurer** shall not be liable for Loss under this [Directors and Officers and Company] Coverage Section Coverage on account of any **Claim** … brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity … <u>unless such Claim … is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**</u>.

(Policy §C(1)(e)(i), p. 4 [bold in original; underline added].)

The Action falls within this derivative action exception to the Insured v. Insured exclusion under well-established rules governing the interpretation of insurance policies, specifically exclusion clauses.

> Under California law, interpretation of an insurance policy is a question of law, subject to the ordinary rules of contractual interpretation. Policy language must be interpreted in

> context, with regard to its intended function in the policy, keeping in mind that the fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs. If there is ambiguity, however, it is generally resolved against the insurer and in favor of coverage. We generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable.

*AXIS Reinsurance Co. v. Northrop Grumman Corp*., 975 F.3d 840, 847 (9th Cir. 2020) (citations and punctuation omitted).

> [I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer. An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language. The exclusionary clause must be conspicuous, plain and clear. This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded. The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded.

*Harris*, *supra*, 297 F. Supp. 2d at 1224–1225 *quoting MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003).

In *Harris*, the insured had coverage under essentially the same policy language as the derivative action exception to the Insured v. Insured exclusion in Policy §C(1)(e)(i), excluding any claim:

> brought or maintained by or on behalf of the Insured Company and/or Directors or Officers or by any security holder of the Insured Company whether directly or derivatively except …a Claim that is brought and maintained by security holders who are acting totally independently of, and totally without the solicitation, assistance, participation, or intervention of any Director or Officer of the Insured Company.

*Harris*, *supra*, 297 F. Supp. 2d at 1222.

The insurer argued, unsuccessfully, that the Insured v. Insured exclusion applied to securities fraud class actions brought against two officers of the insured because the "consolidated amended complaint in the underlying action referenced conversations with confidential informants who were officers of subsidiaries of" the insured. *Id.* at 1222. The *Harris* court rejected the insurer's argument that the exclusion "conspicuously, plainly and clearly" apprised the insured's officers that they were not covered because the securities fraud action was maintained with the "assistance," as defined by the dictionary, of the insured's officers and directors. *Id.* at 1225-1226. Instead, the *Harris* court held:

> that the exclusion bars coverage for securities fraud claims only if a director or officer actively and voluntarily provided substantial aid or help to a securities fraud plaintiff with the intent to aid the prosecution of the lawsuit in order to obtain an economic benefit. This interpretation avoids the problems of absurdity, violations of public policy, and illusory coverage inherent in Gulf's proposed interpretation, while providing Gulf with protection from collusive suits, which was apparently the primary reason that such exclusions were adopted.

*Id.* at 1226–1227.

Scottsdale does not discuss *Harris* and makes no attempt to show, because it cannot, that, as a Flora director, Gross "actively and voluntarily provided substantial aid or help to [himself as the plaintiff acting on behalf of Flora in the derivative Action] with the intent to aid the prosecution of the [Action] in order to obtain an economic benefit." *Id.* Scottsdale does not meet its burden to show that the Claim is excluded under the "clear and unmistakable language" of Insured v. Insured exclusion, where any ambiguity is interpreted against Scottsdale. *Id.* at 1224-1225; *AXIS Reinsurance*, *supra*, 975 F.3d at 847. To the contrary, Flora (and Gross) reasonably expected coverage under the derivative action exception, because Gross was a Flora shareholder who "brought or maintained" the Claim who briefly served as a director well after the Demand Letter, during which time he took no action regarding the Claim, including any action that could be considered "solicitation, assistance, active participation … or intervention." Scottsdale wrongly argues that it can deny the Claim under the Insured v. Insured exclusion based on the mere fact Gross became a Flora Director for three weeks, but that argument ignores both the language of the derivative action exception in Policy §C(1)(e)(i) and *Harris.*[1]

Instead, Scottsdale cites distinguishable "dual capacity" cases in support of its groundless argument that coverage is precluded as a matter of law by the Insured v. Insured exclusion. Unlike *Harris*, none of these cases concern a policy clause similar to the derivative action exception in Policy §C(1)(e)(i). In *Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 244 F.3d 715, 721 (9th Cir. 2001), a former director and shareholder insured filed a cross-claim on his own behalf seeking damages after the insured rejected his acquisition bid, so the court never considered contractual

[1] Flora also ignores It also ignores that because the Policy is a claims made policy, a claim is evaluated at the time it is tendered. (*See Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* 184 Cal.App.4th 196, 206-207 (2010).) When Gross Claim was tendered, Gross was not a director.

language akin to the derivative action exception in Policy §C(1)(e)(i). *Id.* at 721-723. Similarly, in *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 668 (9th Cir. 2009), another inapposite case cited by Scottsdale, the court held that the "insured versus insured exclusion in the relevant policies bars coverage for [insured's] claims, because a post-bankruptcy debtor in possession acts in the same capacity as the pre-bankruptcy debtor for the purpose of directors and officers liability insurance." *Biltmore* describes the same anti-collusive purpose of the Insured v. Insured exclusion noted in *Harris*:

> [t]he [insured v. insured] exclusion arose in D & O policies as a reaction to several lawsuits in the mid–1980s in which insured corporations sued their own directors to recoup operational losses caused by improvident or unauthorized actions. Such lawsuits created problems of moral hazard, collusion, and unintended expansion of coverage. The reasonable expectations of the parties were that they were protecting against claims by outsiders, not intracompany claims.

*Id.*

The derivative exception clause in Policy §C(1)(e)(i) addresses this concern by preserving the exclusion unless the Claim "is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**."

Scottsdale's untenable interpretation of the Insured v. Insured exclusion provision leads to the absurd proposition that there is no coverage because Gross as shareholder colluded with himself by becoming a Director for three weeks during which time he did nothing to assist with the Claim. *Harris*, *supra*, 297 F. Supp. 2d at 1226 ("The Court cannot adopt an interpretation that would lead to such absurd results."). Gross's short term as Director does not change the reality that he was a Flora shareholder who, independently of any Insured, made the meritorious Claim to Flora which Scottsdale failed to timely accept or deny, and then Gross filed the Underlying Action because Flora had no resources to prosecute the Claim. The derivative action exception to the Insured v. Insured coverage exclusion applies, and Scottsdale is liable for breach of contract in failing to provide coverage for the Claim as required by the Policy.

### E. There Is A Triable Issue of Fact Regarding Whether Scottsdale Acted with Fraud, Entitling Him to Punitive Damages.

An insured may be entitled to recover punitive damages if she can prove that Allstate not only denied or delayed the payment of policy benefits unreasonably or without proper cause, but, in doing so, was guilty of malice, oppression or fraud. *Moradi–Shalal v. Fireman's Fund Ins. Companies,* 46 Cal.3d 287, 305 (1988). As set forth above, there is ample evidence that Scottsdale not only acted in bad faith, but deliberately defrauded Gross. Specifically, when Verges asked Scottsdale, at the request of Gross, whether Gross' becoming a director would interfere with coverage, Klass, Scottsdale's representative, answered in the negative. Gross relied on Scottsdale's representations. Scottsdale clearly was attempting to defraud Gross into negating any insurance coverage for his claims by providing reassurances that Gross becoming a director would not affect coverage, then using Gross' status as a director to deny coverage on a multi-million-dollar claim. This is certainly clear and convincing evidence of fraud.

## IV. CONCLUSION

For the foregoing reasons, Gross respectfully requests that the Court deny the motion for summary judgment.

DATED: October 24, 2025 QUADRA & COLL, LLP

By: /s/ Rebecca Coll
JAMES A. QUADRA
REBECCA COLL
ROBERT D. SANFORD

Attorneys for Plaintiff
TERRY GROSS