United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TERRY GROSS,<br>Plaintiff,<br>v.<br>SCOTTSDALE INSURANCE COMPANY, et al.,<br>Defendants. | Case No. 5:24-cv-02069-EJD<br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>Re: ECF No. 41 |

Plaintiff Terry Gross ("Gross"), a former director and shareholder of Flora Bioscience, Inc. ("Flora"), brings this suit against Defendant Scottsdale Insurance Company ("Scottsdale") and Nominal Defendant Flora in connection with insurance coverage that Scottsdale issued to Flora. Defendant Scottsdale moves for summary judgment. *See* Defendant Scottsdale Insurance Company's Motion for Summary Judgment ("MSJ"), ECF No. 41. Gross filed an opposition, and Scottsdale filed a reply. Opposition ("Opp."), ECF No. 45; Reply, ECF No. 48.

The Court heard oral argument from the Parties on December 4, 2025, and took the matter under submission. Hearing Tr., Dec. 4, 2025, ECF No. 56. For the reasons stated below, the Court GRANTS Defendant's motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. *See* Def.'s Statement of Undisputed Facts ("Fact" or "Pl.'s Resp. to Fact"), ECF No. 48-1.[1]

[1] When citing to the Separate Statement of Facts throughout this Order, the Court references the evidence cited therein.

Scottsdale issued a business and management indemnity policy ("the Policy") to Flora for the policy period of June 2018 to June 2019. Fact No. 1. The Policy contained a Directors and Officers and Company Coverage Section ("D&O Section") that, in relevant part, provided coverage for claims made against directors and officers of Flora. Fact Nos. 2–3. Critically, the D&O Section excluded coverage for claims "brought or maintained by . . . any Insured in any capacity"—that is, suits brought by one director or officer against another director or officer ("the Insured v. Insured Exclusion"). Zartman Decl. Ex. A, ECF No. 41-6 at 26.

On December 17, 2018, Gross, a shareholder of Flora, made a demand ("the Claim") on Flora's board of directors to sue Flora director John Alderete for mismanagement and breach of fiduciary duties. Fact No. 6. Flora notified Scottsdale of the Claim shortly thereafter. Pl.'s Resp. to Fact No. 7. Gross later informed Flora's board that the company should also take action against directors Robert Robbins and Mark Stoll for their alleged participation in Alderete's mismanagement. Fact No. 20. On March 15, 2019, Aaron Klass (a senior claims specialist at Scottsdale) advised Scott Verges (a Flora director) that Scottsdale had retained counsel to investigate Gross's Claim. Fact No. 8. On May 21, 2019, Scottsdale's defense counsel Joseph Breen completed his investigation of Gross's allegations and provided his report to Verges and Scottsdale. Fact No. 9. The report concluded that the Claim had merit and a suit against the Underlying Defendants would likely succeed. Fact No. 18.

Around the same time, in March 2019, Verges and another director decided to sell their shares in Flora and resign as directors. Fact No. 11. Gross allegedly agreed to purchase those shares and become Flora's sole director only if doing so would not interfere with his Claim. FAC ¶ 18. When Klass allegedly said that the Claim would still be eligible for coverage, Gross accepted the director position. *Id.* Gross served as director for three weeks from May 2019 to June 2019, but he resigned because Flora was unable to obtain new D&O insurance. Fact Nos. 12, 15.

On August 2, 2019, Scottsdale denied the Claim. Fact No. 26. Scottsdale asserted that because Gross had been a Flora director, he was considered an Insured under the Policy, so his

United States District Court
Northern District of California

Claim against Flora and its directors and officers fell under the Insured v. Insured Exclusion. *Id.*

Flora's board still supported Gross's Claim, but it did not have the resources to pursue the action itself. So, in May 2020, Gross sued the Underlying Defendants individually and derivatively on behalf of Flora for breaches of fiduciary duties. Gross Decl., ECF No. 41-2 ¶ 14. Gross settled the action as to Robbins and Stoll and agreed not to collect the settlement amount in exchange for an assignment of Robbins and Stoll's rights against Scottsdale under the Policy. Fact No. 22.

Gross filed the instant suit against Scottsdale in December 2023 in Santa Clara County Superior Court. Scottsdale removed the action to this Court in April 2024.

## II. LEGAL STANDARD

Courts may grant summary judgment for a moving party only if that party shows that "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute when enough evidence exists in the record for a reasonable fact finder to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the case. *Id.*

When evaluating whether a moving party has satisfied this standard, courts view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). Taking this perspective, courts apply a burden-shifting test. As the moving party, Defendant bears the initial burden to produce evidence showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If Defendant meets that burden, Plaintiff must produce evidence "from which a jury could find in [its] favor" to defeat summary judgment. *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

## III. DISCUSSION

Defendant Scottsdale moves for summary judgment on Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith denial of

insurance, and punitive damages. The Court will examine each in turn.

**A. Breach of Contract**

To succeed on a claim for breach of contract, a plaintiff must prove 1) the existence of a valid contract, 2) the plaintiff's performance, 3) the defendant's breach, and 4) damage resulting from the breach. *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489 (2006). Gross alleges that Scottsdale breached the Policy by declining coverage for the Claim. FAC ¶¶ 23–27.

Scottsdale contends that Gross was covered by the policy and thus that the Insured v. Insured Exclusion bars coverage of Gross's claim. MSJ at 18–21. The Insured v. Insured Exclusion states, "**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim** . . . brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity . . ." Zartman Decl. Ex. A at 26 (bold in original). The Policy defines "Insured" to include "any person who was, now is, or shall become . . . a duly elected or appointed director . . . of [Flora]." *Id.* at 24. Thus, the Insured v. Insured Exclusion bars coverage for claims "brought or maintained by" anyone who "was, now is, or shall become" a Flora director. Here, Gross spent three weeks as a Flora director. Scottsdale argues that as a result, Gross was an Insured both when he sent the demand letter (before he became a director) and when he filed suit (after he was a director). MSJ at 19.

The Court finds this argument persuasive. Neither the Insured v. Insured Exclusion nor the definition of "Insured" imposes a temporal limitation on who constitutes an Insured. Once a person becomes a director, they are an Insured, and any claim they have filed or will file is excluded from coverage. The plain text of the Insured v. Insured Exclusion thus applies to Gross's claim. *See, e.g., LaFon v. American Casualty Co*., No. SACV 93-42-GLT (C.D. Cal. Sept. 17, 1993), aff'd, 73 F.3d 369 (9th Cir. 1995) (rejecting the argument that the plaintiff was suing as an individual and not as an officer or director, and stating "[T]he language of the Policy is controlling: The Policy's Insured v. Insured Exclusion bars 'any claim made against the Entity and/or any Insured by any other Insured and/or the Entity.'")

Gross makes two arguments in opposition. First, Gross contends that an exception to the

Insured v. Insured Exclusion for derivative actions applies to his Claim ("the Derivative Action Exception"). Opp. at 15–18. Under the Derivative Action Exception, the Insured v. Insured Exclusion does not bar coverage if the Insured's Claim "is brought derivatively by a securities holder of [Flora] and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any Insured." Zartman Decl. Ex. A at 26. Gross argues that since he made the Claim derivatively when he was a Flora shareholder, and did not provide any "solicitation, assistance, active participation . . . or intervention" regarding the Claim during his three-week term as a director, the Derivative Action Exception applies.

The Court does not find this argument persuasive. The Derivative Action Exception allows derivative claims to go forward only if they are "continued totally independent of . . . any Insured." Zartman Decl. Ex. A at 26. Once Gross became a Flora director, he was an Insured, any claim he had or would file could no longer proceed "totally independent of . . . any Insured." The derivative action exception thus does not apply.

Second, Gross argues that the Insured v. Insured Exclusion is only intended to prevent collusion among directors, which he argues is not at issue here. To support this argument, Gross relies on *Harris v. Gulf Ins. Co.*, another case involving a similar policy. Opp. at 16–17 (citing *Harris v. Gulf Ins. Co.*, 297 F. Supp. 2d 1220 (N.D. Cal. 2003)). In *Harris*, the insurer argued that the Insured v. Insured Exclusion applied to an action brought against two former officers of the insured and that the derivative action exception did not apply because the complaint referenced conversations with informants who were officers of the insured. *Harris*, 297 F. Supp. 2d at 1222. The court rejected this argument, finding that the insurer's interpretation of the derivative action exception would prevent plaintiffs from obtaining information from the very directors they are suing. *Id.* at 1225–26. Instead, the court reasoned that the Insured v. Insured Exclusion was likely adopted to prevent collusive suits, and thus only barred coverage if "*a director or officer actively and voluntarily provided substantial aid or help* to a securities fraud plaintiff" to "obtain an economic benefit." *Id.* at 1226 (emphasis added). Gross argues that during his time as a Flora director, he did not "actively and voluntarily provide[] substantial aid" to his own Claim, so the

United States District Court
Northern District of California

Insured v. Insured Exclusion should not apply. *Harris*, 297 F. Supp. 2d at 1226.

Scottsdale disagrees with this policy argument, contending that *Harris* is inapposite. Reply at 9. In *Harris*, the court assumed that the exclusion was adopted to prevent collusion, but the policy itself was silent on the matter. *Harris*, 297 F. Supp. 2d at 1227 (reasoning that the exclusion provided "protection from collusive suits, which was apparently the primary reason that such exclusions were adopted"). Here, however, the Insured v. Insured Exclusion specifically states that it bars coverage for a claim by an Insured "whether or not collusive." Zartman Decl. Ex. A at 26.

The Court finds Scottsdale's policy argument more persuasive. To be sure, exclusionary clauses in insurance policies are construed narrowly against the insurer, and any exclusion must be "conspicuous, plain and clear." *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 648 (2003). But here, it was: the Insured v. Insured Exclusion clearly states that it bars coverage for a claim by an Insured "whether or not collusive." Zartman Decl. Ex. A at 26. Thus, it is immaterial whether there was any collusion: the moment Gross became a director, the Insured v. Insured Exclusion barred his claim.

In one last effort to avoid summary judgment, Gross argues that Klass told Verges that Gross's elevation to director would not affect his Claim. Opp. at 8 (citing Verges Decl., ECF No. 45-4 ¶ 16). Scottsdale disputes this fact, contending that Gross's evidence—an email from Verges stating that Scottsdale had "no objection" to Gross becoming director—does not show that Klass said that such a move would not affect Gross's claim. Scottsdale also argues that the statement is hearsay. Def.'s Statement of Undisputed Facts at 23 (citing Fed. R. Evid. 802); *see also* Hearing Tr. 9:18 (Defendant's argument), 23:20–23 (Plaintiff's response).

The Court finds that though this fact is disputed, it is not material. Gross contends that he relied on Klass's representation—that he never would have agreed to become director had he known doing so would require forfeiting his claim. Opp. at 9; Hearing Tr. 25:4–5. Gross does not contend that the oral representation modified the Policy; rather, he argues that he reasonably relied

on Klass's oral explanation of the Policy.[2] Hearing Tr. 27:16–22. But as Scottsdale notes, a party cannot claim breach of contract based on alleged oral representations that contradict the express terms of the contract. "The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture." *Manneck v. Laws. Title Ins. Corp.*, 28 Cal.App.4th 1294, 1303 (1994); *see also Dollinger DeAnza Assocs. v. Chicago Title Ins. Co.*, 199 Cal.App.4th 1132, 1154 (2011). Here, the Policy expressly excluded Gross's Claim. Thus, even if Klass told Verges the Claim would be covered, and even if Gross reasonably relied on that statement, Klass's statement and Gross's reliance would not create coverage for the Claim through waiver or estoppel.

In sum, the Insured v. Insured Exclusion applies to Gross's Claim, and the Derivative Action Exception to the Exclusion does not. Consequently, the Court finds that Scottsdale did not owe a duty to defend or indemnify the directors and officers in Gross's Claim and thus did not breach the Policy in denying coverage. The Court **GRANTS** Scottsdale's motion for summary judgment on the breach of contract claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing and Bad Faith Denial of Coverage

In Gross's second and third causes of action, Gross claims that Scottsdale acted in bad faith by failing to defend and indemnify Robbins and Stoll. Gross alleges that Scottsdale (1) failed to fully investigate the applicability of the Insured v. Insured Exclusion and unreasonably relied on that exclusion to deny coverage, and (2) allowed Gross to be appointed as a Flora director and

[2] Nonetheless, the Court notes that such an argument would not succeed: an oral representation cannot change the terms of a contract where—as here—the policy's integration clause expressly states it may only be changed in writing. Zartman Decl. Ex. A at 22; *Mercury Ins. Co. v. Pearson*, 169 Cal. App. 4th 1064, 1073 (2008) (finding that as a matter of law, the insurer could not have authorized or ratified changes made to a policy by oral statements).

United States District Court
Northern District of California

used that appointment as pretext to deny coverage based on the Insured v. Insured Exclusion. FAC ¶¶ 30, 33.

A claim for breach of the implied covenant of good faith and fair dealing and a claim for bad faith denial of coverage both require that a plaintiff show that the insurer owed benefits under the policy. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35–36 (1995) (elements of bad faith); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) (elements of breach of implied covenant). As such, Gross's causes of action for breach of the implied covenant and bad faith are predicated on his breach of contract claim. *Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 244 F.3d 715, 719 (9th Cir. 2001) (citing *Waller*, 11 Cal. 4th at 37). "If there is no *potential* for coverage . . . there can be no action for breach of the implied covenant . . . because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36.

Here, the Court has already determined that the Policy's terms did not require Scottsdale to cover the Claim. *See supra* Part III.A. Absent that contractual right, Gross's claims for breach of the implied covenant and bad faith denial of coverage fail. The Court **GRANTS** Scottsdale's motion for summary judgment as to these two claims.

### C. Punitive Damages

To recover punitive damages, Gross must prove by clear and convincing evidence not only that Scottsdale denied coverage unreasonably, but that it acted with malice, oppression, or fraud. Cal. Civ. Code § 3294(a); *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1121 (2001).

Here again, Scottsdale's denial of coverage was not unreasonable because the Policy did not require Scottsdale to cover the Claim at all. As a result, the Court **GRANTS** Scottsdale's motion for summary judgment as to the claim for punitive damages.

## IV. CONCLUSION

For the reasons above, the Court finds that there is no material dispute that the Policy did not cover Gross's Claim. Consequently, when Scottsdale denied coverage, it did not breach the Policy, breach the implied covenant, or act in bad faith. The Court **GRANTS** summary judgment

United States District Court
Northern District of California

to Scottsdale on all claims.

**IT IS SO ORDERED.**

Dated: August 18, 2026

EDWARD J. DAVILA
United States District Judge